IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GILBERTO GONZALEZ,<br><br>       **Defendant.** | 1:06-cr-351-WSD |

### OPINION AND ORDER

On November 27, 2006, Defendant appeared before Chief Magistrate Judge Gerrilyn G. Brill for his initial appearance and arraignment on charges brought in the Superseding Indictment. At this time, Defendant indicated that he could not afford counsel, and Magistrate Judge Brill appointed David MacKusick to represent Defendant under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A ("CJA"). On February 9, 2007, Defendant privately retained Steven Berne, who currently serves as his counsel in this matter.

Based on Defendant's retention of private counsel, and upon review of the evidence available at the time of Defendant's arraignment, the Court suspected that Defendant may have had sufficient resources to retain counsel when he made his

initial appearance in this district on November 28, 2006.[1]  Accordingly, on May 2, 2007, the Court ordered Defendant to show cause why he should not reimburse the Court for the costs of appointing counsel from the time of his initial appearance to when he retained private counsel on February 9, 2007.

The Court conducted the show cause hearing on May 16, 2007.  The hearing was continued on June 5, 2007 and June 29, 2007 to allow Defendant to provide further information about his finances.

**Findings of Facts**

Defendant was arrested in California on or about November 9, 2006.  At the time of his arrest, Defendant owned a business and had total assets of $138,670 and total liabilities of $47,000.  Defendant had a monthly income of $7,000 and

---

[1] The Court notes that the Defendant retained counsel when he initially was arrested in Los Angeles on November 9, 2006.

monthly expenses of $4,880, including a monthly mortgage payment of $1,400.[2]

Defendant retained counsel to represent him in California.

On November 28, 2006, just two weeks after Defendant represented to the United States District Court for the Central District of California that he had significant assets and the ability to pay for counsel, he told the Court in this district that he had no property or income and was unable to retain counsel, leading the Court to appoint CJA counsel for him. Defendant's representations to this Court were substantially inconsistent with those he made to the court in California, and also with his retention of private counsel in California and here.

The show cause hearing established that Defendant owned property of substantial value and had a significant income when he was arrested on the charges in the superceding indictment. The hearing showed further that Defendant essentially requested an appointed lawyer as a stop-gap until he could retain a lawyer in this district:

---

[2] Defendant's car payment was $1,600 per month and his credit card payment was $600 per month. Defendants' car and credit card debt could have been reduced immediately by selling one or more of the cars or replacing them with less expensive models. The Defendant had three cars for two adults in his household. The average car payment per vehicle is $533. Payments at this level suggest that one or more of the cars were luxury vehicles. Defendant's counsel represented two of these cars were sold to pay the fees of his counsel in California.

> When [Defendant] came to Atlanta, he did not know
> anybody, that is true. And he did not know about any
> attorneys, he didn't know what was going on with his
> finances at that time. He was three thousand miles away
> from home, and at that point in time he stated in his
> opinion that he did not have any property and that he
> didn't have any money to hire an attorney.
> And almost two weeks later, just weeks later he went to
> go sell his property. It was in December, two weeks
> later. He didn't waste any time. He didn't waste any
> time. He didn't waste any time, Your Honor. Just two
> weeks later he said to his wife, we need to get going on
> this so I can afford an attorney. And it took some time,
> but he did it.
> And, yes, for that short period of time he was without
> paid counsel. But that's not that unusual when you don't
> have any contacts in the community. It took time for him
> to find those contacts.

At the time the Court appointed counsel for Defendant in this district, Defendant owned a home with equity valued at about $290,000. Defendant also owned another parcel of real estate the he sold to pay the fees of his current lawyer. It appears that Defendant is paying his current counsel's fees.

**Discussion**

The Criminal Justice Act provides that "the United States magistrate judge or the court, if satisfied after appropriate inquiry that [a] person is financially unable to obtain counsel, shall appoint counsel to represent him." 18 U.S.C.

§ 3006A(b). The CJA does not state any economic requirements for "financially unable to obtain counsel."[3]

The Northern District of Georgia's Criminal Justice Act Plan ("CJA Plan") sets forth procedures for appointing attorneys for "financially eligible" criminal defendants, but does not set forth any specific guidelines for financial eligibility. The CJA Plan states only that "[t]he determination of eligibility for representation under the CJA is a judicial function to be performed by a district or magistrate judge after making appropriate inquiries concerning the person's financial condition." Local Criminal Rules, App. D. at IV.D.1  The Court may also, on motion or *sua sponte*, redetermine a defendant's financial ability to obtain counsel if circumstances are believed to have changed. Id. at IV.D.3.

Financial inability to obtain counsel is not "complete indigency." United States v. Ellis, 154 F.R.D. 697, 699 (M.D. Fla. 1993). The Court must make an "appropriate inquiry" into the defendant's financial circumstances, which the 11th Circuit defines as "a full inquiry in the manner of Jackson v. Denno . . . into the

---

[3] Federal Rule of Criminal Procedure 44 also provides that "A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right."

financial ability of the defendant to obtain counsel." Wood v. United States, 387 F.2d 353, 354 (5th Cir. 1967). The "procedure varies with the circumstances and no one method is required." Ellis, 154 F.R.D. at 699. The CJA is designed to allow the Court to err on the side of appointment. The government or the Court *sua sponte* may seek reimbursement if the defendant has financial wherewithal to provide it. 18 U.S.C. § 3006A(f) ("Whenever the United States Magistrate Judge or the Court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney . . . or to the Court for deposit in the Treasury as a reimbursement to the appropriation . . . .") See also Local Criminal Rules, App. D at IV.D.3.

In United States v. Deutsche, 599 F.2d 46 (5th Cir. 1979), the Fifth Circuit upheld a district court's refusal to appoint counsel in a criminal case based on findings of fact that defendant had access to funds and a net worth of $981,089.00. The Fifth Circuit noted, "Although we can discern no error in the decision of the district court, we wish to remind the judge that at any time during the prosecution, he may properly consider appointing counsel if he becomes concerned about the

financial burden upon [defendant] of paying an attorney. The United States may always seek reimbursement for any funds expended." Id. at 49.

In Samuel v. United States, 420 F.2d 371 (5th Cir. 1979), the circuit court reversed a district judge's decision not to appoint counsel for a truck driver with weekly salary of $85 to $90 and no property. The court found that this level of income qualified as "financially unable to obtain counsel."[4]

The circumstances here are unique. The Court is concerned about the truthfulness of the Defendant's representations in this district that he had no property or income thus, which caused the Magistrate Judge to appoint counsel for him. However, the Court accepts that the Defendant may have been confused or misinterpreted the Court's questions about his assets. The issue before the Court, therefore, is twofold. First, was the Defendant financially unable to obtain counsel? Second, if Defendant was financially able to retain counsel, should he be

---

[4] An average truck driver's yearly salary today is approximately $40,000. Assuming truck drivers' salaries have remained relatively constant with respect to the rest of the economy since 1969, this decision would deem someone with a yearly salary of approximately $40,000 per year and no other assets as financially unable to obtain counsel.

required to reimburse to the Court the cost incurred by the government to provide appointed counsel?

Defendant had substantial assets when the Court appointed counsel to represent him.  He had equity in a home worth about $290,000.  He owned a business generating approximately $7,000 a month.  His monthly expenses were excessive, particularly the amount spent on expensive cars which could have been sold to provide him with increased capacity to retain counsel.  Defendant has further retained private lawyers in California and in this district, demonstrating *ipso facto* that he has sufficient resources to pay for representation.[5]

Defendant's counsel provided a practical explanation for why Defendant wanted appointed counsel while he searched for a lawyer to retain.  However, the Criminal Justice Act is not a means for providing representation bridge loans until a private lawyer can be retained.  It provides for the appointment of counsel for defendants who cannot afford representation.  Defendant does not fall into that category and he should be required to reimburse the government for the fees paid on his behalf.  According to the Court's records, fees in the amount of $ 4,701.20

---

[5] Defendant provided a variety of pictures of his family and his business at the show cause hearing.  These pictures illustrate that Defendant is able to afford to live a comfortable, prosperous life.

were paid to the lawyer appointed to represent Defendant before he retained a private lawyer. This is the amount Defendant is required to reimburse.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant reimburse the Court the amount of $ 4,701.20 on or before December 31, 2007.

**SO ORDERED** this 30th day of October, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE